UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRANDI M.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:19-cv-02972-JPH-DML |
| | ) |
| ANDREW M. SAUL Commissioner of | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Brandi M. seeks judicial review of the Social Security Administration's decision denying her petition for Disability Insurance Benefits and Supplemental Security Income. She argues that the ALJ's decision is unsupported by substantial evidence because the ALJ: (1) ignored evidence that supported Plaintiff's subjective symptoms when making a credibility determination; (2) ignored the possibility of her symptoms equaling a Listing and failed to hear evidence from a medical expert on the issue; and (3) failed to make a logical bridge between the evidence and the RFC and work ability determinations. *See* dkt. 7 at 3–4. For the reasons that follow, the decision is **AFFIRMED.**

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

# I.
# Facts and Background

Plaintiff was 32 years old at the alleged onset date of her disability. Dkt. 7 at 4. She has the equivalent of a high school degree and worked in the past as a department and assistant manager in retail and as a referral coordinator at a medical clinic. Dkt. 5-2 at 43–45. Since the alleged onset date, Plaintiff has been diagnosed with Chiari malformation, dkt. 5-9 at 9, trigeminal neuralgia and headaches with nausea, dkt. 5-9 at 53, depression, dkt. 5-11 at 27, and other ailments. She alleges that she is therefore "disabled within the meaning of the Social Security Act." Dkt 1 at 2.

Plaintiff applied for Disability Insurance Benefits and Supplemental Security Income in April 2015 with an alleged onset date of February 2014. Dkt 5-2 at 11. The initial claim was denied on March 25, 2016 and Plaintiff requested a hearing on March 31, 2016. *Id.* Administrative Law Judge Joel Fina held a video hearing in May 2018, and issued his written decision denying Plaintiff's claim on July 26, 2018. *Id.* Plaintiff appealed to the Appeals Council, which denied review on in May 2019. Dkt. 5-2 at 2. Plaintiff brought this action asking the Court to review the denial of benefits under 42 U.S.C. § 405(g) on July 18, 2019. Dkt. 1.

In his decision, the ALJ followed the five-step sequential evaluation in 20 C.F.R. § 404.1520(a)(4) and concluded that Plaintiff was not disabled. Dkt. 5-2 at 13–24. Specifically, the ALJ found that:

- At Step One, Plaintiff had not engaged in substantial gainful activity[2] between the alleged onset date and the last date she was insured, December 31, 2017.  Dkt. 5-2 at 13.

- At Step Two, she had "the following severe impairments: Chiari I malformation, status post decompression; history of trigeminal neuralgia; headaches; and major depressive disorder."  Dkt. 5-2 at 13.

- At Step Three, she did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Dkt. 5-2 at 13–14.

- After Step Three but before Step Four, she had the RFC "to perform sedentary work . . . except lifting/carrying 10 pounds occasionally and 5 pounds frequently."  She could "stand/walk approximately 2 hours per 8-hour workday and sit approximately 6 hours."  She could "never climb ladders, ropes, or scaffolds, kneel and crawl."  She could "perform postural activities (i.e. climbing ramps/stairs, balancing, stooping, crouching) only on an occasional basis."  She is limited "to frequent reaching, handling objects (gross manipulation), and fingering (fine manipulation)" with her right upper extremity.  She needs to "avoid concentrated exposure to strobing/flashing lights and loud noise (such as which would be experienced in a factory setting)."  She also needs "to avoid all exposure to unprotected heights and dangerous moving machinery."  She is "limited to simple and routine tasks, in work performed at a variable pace, involving only end of day production requirements, and with no hurry or other periodic production quotas."  She is also "limited to only occasional contact with the public in the work setting."  Dkt. 5-2 at 16–17.

- At Step Four, Plaintiff "was unable to perform any past relevant work."  Dkt. 5-2 at 22.

- At Step Five, considering Plaintiff's "age, education, work experience, and residual functional capacity, there were jobs in significant numbers in the national economy" that she could have performed.  Dkt. 5-2 at 23.

---

[2] Substantial gainful activity is defined as work activity that is both substantial (involving significant physical or mental activities) and gainful (usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. § 404.1572(a).

## II.
## Applicable Law

"The Social Security Act authorizes payment of disability insurance benefits . . . to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts." *Id.* at 217. First, it requires an inability to engage in any substantial gainful activity. *Id.* And second, it requires a physical or mental impairment that explains the inability and "has lasted or can be expected to last . . . not less than 12 months." *Id.* "The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Id.* at 274.

When an applicant seeks judicial review, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence supports the ALJ's decision. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In evaluating the evidence, the Court gives the ALJ's credibility determinations "considerable deference," overturning them only if they are "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)–(v), evaluating in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and, if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(e), (g). The burden of proof is on the claimant for Steps One through Four, but shifts to the Commissioner at Step Five. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence supports the ALJ's decision, the Court must affirm the benefit denial. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically appropriate. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## III.
## Analysis

Plaintiff presents three arguments on appeal. First, she argues that the ALJ's decision is unsupported by substantial evidence because the ALJ did not give adequate weight to her subjective symptoms in making his RFC determination. Dkt. 7 at 3. Second, she alleges that the ALJ ignored the possibility of her symptoms equaling Listing 11.02 and failed to hear evidence from a medical expert on the issue. *Id.* at 4. Finally, she argues that the ALJ failed to make a "logical bridge" between the evidence presented regarding Plaintiff's migraines and the light RFC. *Id.* Because the first and third arguments present substantially similar issues about the proper consideration of migraine evidence in the RFC determination, they have been combined for this analysis.

### A.   The ALJ's Treatment of Plaintiff's Subjective Symptoms

Plaintiff argues that the ALJ did not appropriately consider her description of the "intensity, persistence, and limiting effects of" her subjective

symptoms from headaches when he decided that she has the RFC for light work.  Dkt. 5-2 at 21–27, 36–38.  The Commissioner contends that, because the ALJ gave specific reasons supported by the record for his evaluation of Plaintiff's symptoms, his decision created a logical bridge between the evidence and his conclusion.  Dkt. 7 at 14–15.

SSR 16-3p instructs the ALJ to apply a two-prong test to weigh claimant's subjective symptoms.  First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain."  SSR 16-3p, at *2; *see also* 20 CFR § 416.929.  Second, if such an impairment is found, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities."  *Id.*  If there is a conflict between the plaintiff's description and the objective medical evidence presented, the ALJ must consider "other relevant evidence in the individual's case record" to resolve the conflict.  SSR 16-3p, at *4; *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007).

An ALJ's subjective symptom evaluation is a credibility determination entitled to special deference and will be reversed only if patently wrong. *Burmester v. Berryhill,* 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Curvin v. Colvin,* 778 F.3d 645, 651 (7th Cir. 2015)).  "In determining credibility an ALJ must consider several factors, including the claimant's daily activities, her level

of pain or symptoms, aggravating factors, medication, treatment, and limitations." *Villano*, 556 F.3d at 562 (citing 20 C.F.R. § 404.1529(c)).

Here, the ALJ reviewed Plaintiff's subjective assertions about her symptoms in depth, noting: her description of "constant pain in her head," "numbness and tingling in her legs" that resulted in loss of balance and falling, feelings of dizziness and lightheadedness as well as nausea and vomiting caused by her headaches, flare-ups in pain that occur roughly 7–10 days each month, and other physical complaints. Dkt 5-2 at 17–18. The ALJ also acknowledged the testimony of Plaintiff's father who testified to his daughter's "good days and bad days" and about the help that he and his wife provide for tasks that Plaintiff cannot accomplish on her own. Dkt. 5-2 at 18.

After outlining the testimony that Plaintiff presented about her subjective symptoms, the ALJ addressed the first prong of SSR 16-3p, assessing the evidence to determine if there is a "medically determinable impairment" that "could reasonably be expected to cause the alleged symptoms." Dkt. 5-2 at 21. He examined the medical records identifying Plaintiff's diagnoses of Chiari 1 malformation and trigeminal neuralgia; her trips to the emergency room; the procedures she underwent to identify and treat her pain—including surgery, MRIs, nerve blocks, and pain medication; and appointments with a range of medical specialists and primary care providers. *Id.* at 18–20. This objective medical evidence led the ALJ to conclude that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." *Id.* at 21.

However, the ALJ determined that, under the second prong of SSR 16-3p, Plaintiff's assertions about the "intensity [and] persistence . . . of these symptoms" were "not entirely consistent with the medical evidence and other evidence in the record." *Id.* Therefore, he turned to the "other relevant evidence in the case record" to consider how to resolve the conflict. SSR 16-3p, at *4. For example, the ALJ considered findings from two state medical examiners—Dr. Russell Lark, Ph.D., and Dr. Tracey Larrison, D.O.—who reviewed Plaintiff's case in March of 2016 and did not find a disabling impairment. Dkt. 5-2 at 16, 21.

The ALJ also examined evidence consistent with Plaintiff's assertions, such as a statement from her mother submitted in 2015 during her initial application for benefits. Dkt. 5-2 at 21. The statement described the limitations Plaintiff experienced during a "flare-up," including having trouble walking to the point of needing a wheelchair and help with personal care. *Id.* The ALJ gave some, though not great, weight to this statement because Plaintiff's mother was "not familiar with SSA standards for disability" and was not a treating source or medical professional. *Id.*

Finally, the ALJ considered evidence inconsistent with Plaintiff's description of the severity and intensity of her pain. He noted that no doctor told Plaintiff that she was unable to work, that there was a lapse in Plaintiff's seeking medical care between February 2016 and an ER visit in February 2017, and that the record did not include any medical documents since the date of that visit. *Id.* at 20–21.

The ALJ recognized Plaintiff's statements that her lapses in care were a result of inconsistent health insurance coverage and financial difficulties. *Id.* at 20–21. However, the ALJ also noted that she "used to go to the hospital every 3–6 months" but now she did not have "as many flareups" or "consistent day to day pain." *Id.* at 21. Further, there were times when Plaintiff had health insurance coverage and still did not seek medical treatment. *Id.* at 20. She also testified that she had enough pain medication during this period because of a prior prescription. *Id.* at 21.

In light of all of this "other relevant evidence in the case record" the ALJ concluded that her "assertion that the pain she experienced was so severe that it interfered with her ability to perform any work-related activity" was not supported by objective evidence. *Id.* at 21; dkt. 7 at 15.

Plaintiff contends that this weighing of her testimony against the objective evidence amounted to an improper assessment of her personal credibility. Dkt. 7 at 22; *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016). However, assessments of the credibility of plaintiff's "*assertions*" are appropriate and necessary, "especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole*, 831 F.3d at 412 (emphasis in original). The ALJ therefore did not engage in an assessment of Plaintiff's personal credibility but examined the credibility of her assertions about her pain and its impact on her ability to work considering all "relevant evidence in the case record." *Arnold*, 473 F.3d at 823. He noted that "to find an individual 'disabled' requires more than finding that an individual is unable

to work without pain." Dkt. 5-2 at 22. With this standard in mind and considering the evidence that contradicted plaintiff's subjective reports about her pain, the ALJ concluded that there was not objective evidence that "realistically" supported her testimony. *Id.*

While the ALJ did not ultimately find Plaintiff disabled, he did place greater restrictions on her work capacity than the state examiners who reviewed her case did. *See* dkt. 5-2 at 21. In particular, the ALJ concluded that she "needs to avoid concentrated exposure to strobing/flashing lights and loud noise (such as that which would be experienced in a factory setting)" because of her testimony that such lights and noises aggravate her migraines. *Id.* at 17, 21. Additionally, the ALJ restricted her to lifting no more than 10 pounds and gave manipulative limitations based on her issues with her right upper extremity. *Id.* at 21.

The ALJ thus gave Plaintiff a lighter RFC than the other reviewing examiners "because of and not in spite of" her testimony. *Castile v. Astrue*, 617 F.3d 923, 929 (7th Cir. 2010). In short, the ALJ reviewed the evidence presented, weighed the credibility of the assertions, and gave specific reasons to support his finding that Plaintiff was not disabled. That created the required "logical bridge" between the evidence presented about Plaintiff's migraines and the light RFC. Because the ALJ gave specific reasons supported by the record and the evidence does not show that his decision was "patently wrong," it will not be disturbed. *Hall v. Berryhill*, 906 F.3d 640, 644 (7th Cir. 2018); *Burmester*, 920 F.3d at 510.

### B. The ALJ's Consideration of Listed Impairments

Plaintiff argues that the ALJ failed to consider that her migraines could equal Listing 11.02, specifically Subsections B and D, which she contends "is the most closely related listing for consideration of migraine headaches." Dkt 7 at 28. The Commissioner responds that Plaintiff had the burden of presenting evidence supporting a Listing and failed to provide more than a "cursory argument" for how the evidence met or equaled all the criteria of Listing 11.02. Dkt. 9 at 12-13.

SSA's "Listing of Impairments" ("Listings") provides the specific medical conditions that, if met at Step Three in the ALJ's evaluation, qualify a person as disabled within the meaning of 20 C.F.R. § 404.1505 (a). 20 C.F.R. Pt. 404, Subpt. P, App. 1. If a claimant's medical impairments are not described in a specific listing, the ALJ "will compare the findings with those for closely analogous listed impairments. If the findings related to the impairment(s) are at least of equal medical significance to those of a listed impairment, [the ALJ] will find that the impairment(s) is medically equivalent to the analogous listing." *Id.*

Claimants have the burden of proving disability, and an ALJ "will consider only impairment(s) [claimants] say [they] have or about which [the ALJ] receive[s] evidence." 20 C.F.R. § 404.1512(a). An ALJ's decision regarding impairments or medical equivalence must be supported by substantial evidence. *Sims v. Barnhart*, 309 F.3d 424, 429 (7th Cir. 2002). "Substantial evidence means such relevant evidence as a reasonable mind might accept as

12

adequate to support a conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).   A claimant seeking to establish medical equivalence must "present medical findings equal in severity to *all* the criteria for the one most similar listed impairment."  *Sims*, 309 F.3d at 428 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990)) (emphasis in original).  "An ALJ need not address every piece of evidence in his decision" and "need only build 'a bridge from the evidence to his conclusion.'"  *Id.* at 429 (citing *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir.2000).  A reviewing court may not reweigh the evidence or substitute its judgment for that of the ALJ.  *Overman v. Astrue, 546* F.3d 456, 462 (7th Cir. 2008).

There is no specific "migraine" or "headaches" Listing.  Therefore, a showing of medical equivalence to a "closely analogous" Listing is needed to establish disability at Step Three based on migraines or headaches.  SSR 17-2p.  Plaintiff argues that her migraines are "closely analogous" to "dyscognitive seizures" under Listing 11.02B or 11.02D (previously 11.03).  Dkt. 7 at 30. Listing 11.02 includes:

> . . .
>
> B. Dyscognitive seizures (alteration of consciousness without convulsions or loss of muscle control), occurring at least once a week for at least 3 consecutive months despite adherence to prescribed treatment; OR
>
> . . .
>
> D. Dyscognitive seizures occurring at least once every 2 weeks for at least 3 consecutive months despite adherence to prescribed treatment; and a marked limitation in one of the following:
>
>> 1. Physical functioning; or

>    2. Understanding, remembering, or applying information; or
>    3. Interacting with others; or
>    4. Concentrating, persisting, or maintaining pace; or
>    5. Adapting or managing oneself.

*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.02B, D.

Plaintiff cites several District Court cases to support her position. *See e.g. Kwitschau v. Colvin*, No. 11 C 6900, 2013 WL 6049072, at *3 (N.D. Ill. Nov.14, 2013); *Kaiser v. Colvin*, No. 1:14-CV-01480-SEB-MJD, 2015 WL 4138263, at *5 (S.D. Ind. July 7, 2015). She also cites an explanatory note in the SSA's "Program Operations Manual System" (POMS), which provides non-binding interpretation of regulations for internal use. Dkt. 7 at 30. The example explains that chronic migraines medically equal the 11.02 seizure listing when, while taking medication as prescribed, an individual experiences migraines lasting 4 to 72 hours at least twice or more weekly with symptoms including aura, alteration of awareness, and intense headache with throbbing and severe pain, as well as nausea, photophobia, and the need to lie down in a dark and quiet room for relief. Dkt. 7 at 30.

Here, Plaintiff argues that the ALJ's listing decision was not supported by substantial evidence because the ALJ did not address or analyze whether her headaches were medically equivalent to Listing 11.02, specifically, 11.02B and D. Dkt. 7 at 29–31. However, Plaintiff's argument that the ALJ needed to *sua sponte* consider Listing 11.02 under these circumstances fails because (1) medical experts did not find that a listing applied, (2) Plaintiff has not articulated how the medical evidence meets the listing, and (3) Plaintiff has not

14

shown that existing precedents require the ALJ to raise in its written decision a listing that Plaintiff did not argue at the hearing level.

First, Plaintiff's medical records were reviewed by a state-agency physician who found that the medical records did not contain enough evidence to find her condition medically equivalent to Listing 11.02. Dr. Tracey Larrison, a state-agency physician, reviewed Plaintiff's medical records in March 2016 prior to her hearing with the ALJ. In the report Dr. Larrison noted that "the claimant does not meet or equal any listing, particular consideration given to equaling the seizure listing for her trigeminal neuralgia, however, the frequency cannot be supported in the file given her psychological overlay." Dkt. 5-3 at 33. This conclusion was then reflected in the Disability Determination and Transmittal form. Dkt. 5-3 at 20.

When reviewing a claim for disability benefits, the ALJ "is responsible for the finding of medical equivalence." SSR 17-2p. However, "the ALJ may properly rely upon" the opinion of a state agency physician's determination that the claimant does not meet or equal a listing. *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004). When the physician indicates on a Disability Determination and Transmittal Form that the Plaintiff is not disabled, this statement "conclusive[ly] establish[es]" that "consideration by a physician . . . designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." *Id.* at 700 (citation omitted). The statement therefore provides "substantial

evidence support[ing] a finding that [a plaintiff does] not meet or equal a listing." *Id.*

Second, Plaintiff, in her brief to this Court, does not indicate how the evidence of her migraine symptoms presented at the hearing meet or equal the listing criteria. Rather, plaintiff merely cites the listing criteria and the methods of proving the criteria, and then recounts her symptoms. Dkt 7 at 31. Listing 11.02 requires Plaintiff to present "medical findings equal in severity" to at least one event every two weeks for three consecutive months for subpart D, and at least every week for three consecutive months for subpart B, 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.02B, D. But Plaintiff offers only a broad statement that "these headaches occur daily." Dkt 7 at 31. Because these statements about medical equivalence are not specific enough to show that Plaintiff's condition was "equal in severity" to the Listing requirements, Plaintiff has not shown the ALJ's decision was not supported by substantial evidence.

While a failure on one criterion is enough, *see Sims*, 309 F.3d at 428 (finding that claimant must meet "*all*" the listing criteria), the Listing also requires that the symptoms be consistent "despite adherence to prescribed treatment." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.02B, D. Here, Plaintiff notes that "[s]he received occipital nerve blocks which she found effective for left sided pain, but she still struggles with pain on the right side." Dkt. 7 at 31. However, considering her testimony that she did not seek out treatment for about a year and self-medicated throughout that time, dkt. 5-2 at 21, this Court cannot say that the ALJ should have found that her symptoms

16

persisted "despite adherence to prescribed treatment" as required. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 11.02B, D.

Finally, there is no binding precedent that requires an ALJ to *sua sponte* raise and discuss Listings. At the hearing, Plaintiff did not mention Listing 11.02 or argued that her condition met or equaled that listing. Generally, an "ALJ's failure to explicitly refer to the relevant listing alone" does not necessitate reversal and remand. *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004); *cf. Ford v. Saul*, 950 F.3d 1141, 1157 (9th Cir. 2020) (finding that, because the plaintiff's attorney did not raise the issue of equivalence and "[b]ecause the ALJ did not have an obligation to discuss medical equivalence sua sponte, the ALJ did not err is failing to do so."). Here, Plaintiff has not presented a compelling reason why the ALJ's failure to raise and discuss Listings and medical equivalence should result in reversal and remand.

This case is therefore not like *Kaiser*, where the court found that "the ALJ should have at least considered whether Plaintiff's [migraines] met or equaled" Listing 11.02. 2015 WL 4138263, at *5. Here, unlike in *Kaiser*, Plaintiff did not argue how her symptoms meet the specific criteria of the listing—instead, she presented cursory statements about her symptoms. *See id.* at *6–7; dkt. 7. Therefore, because the ALJ was not required to raise the listing on his own, and because Plaintiff did not argue the Listing at the

17

hearing, the ALJ's failure to explicitly mention the Listing in his written decision was not error.[3]

## IV.
## Conclusion

The Court **AFFIRMS** the ALJ's decision denying the Plaintiff benefits.

Final judgment will issue by separate entry.

**SO ORDERED.**

Date: 1/12/2021

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Alison T. Schwartz
SOCIAL SECURITY ADMINISTRATION
alison.schwartz@ssa.gov

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov

Kirsten Elaine Wold
HANKEY LAW OFFICE
kew@hankeylaw.com

---

[3] The ALJ gave a detailed analysis of the Listings he considered including Listing 11.05 ("benign brain tumor"), dkt. 5-2 at 40-41, and Listing 12.04 ("depressive bipolar"), dkt. 5-2 at 15. Plaintiff does not challenge his handling of those Listings.